## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ELIZABETH A. PONCE,                              )
                                                 )
                  *Plaintiff,*                   )
                                                 )
vs.                                              )
                                                 )
SEDGWICK COUNTY, KANSAS, SHERIFF'S OFFICE; )
SHERIFF JEFF EASTER;                             )
in his official capacity, and                    )
DETENTION DEPUTY DUSTIN T. BURNETT;              )
in his individual and official capacity.         )
                                                 )
                  *Defendants*.                  )
_____  )

## COMPLAINT

COMES NOW the plaintiff, Elizabeth A. Ponce, through her undersigned counsel of record, and in support of her claims against Defendants, SEDGWICK COUNTY, KANSAS SHERIFF'S OFFICE, SHERIFF JEFF EASTER, in his official capacity, and DETENTION DEPUTY DUSTIN T. BURNETT, in his individual and official capacity, hereby states and alleges as follow:

## NATURE OF ACTION

1.      Plaintiff brings this action as the result of damages incurred after plaintiff and another inmate, Isabel D. Martin, were subjected to rape, sexual assault, sodomy and excessive force by Sedgwick County Detention Deputy Dustin Burnett while Ponce and Martin were in the custody of the Sedgwick County Sheriff's Office and Sheriff Jeff Easter, at the Sedgwick County Adult Detention Facility (SCADF). At the time Plaintiff was subjected to said rape, sexual assault, sodomy and excessive force, Burnett was employed as a Detention Deputy at the Sedgwick County

1

Adult Detention Facility under the administration and control of Sedgwick County Sheriff's Office and Sheriff Jeff Easter.

2.      To the claimant's best knowledge Deputy Burnett was hired as a Detention Deputy by the Sedgwick County Sheriff in January of 2022. Prior to his employment with the Sheriff's Office, Burnett was a Private Second Class of the United States Army, A Company, 1st Battalion, 16th Infantry, stationed at Fort Riley, Kansas. Burnett entered active duty on August 6, 2018.

3.      Burnett never finished his first full term of service in the military. Rather, he was separated from the Army after less than 2 years for the Commission of a Serious Offense in violation of Article 134 of the Uniform Code of Military Justice (UCMJ), as a result of possessing, receiving or viewing child pornography.

4.      Burnett's discharge also followed incidents of theft (KY personal lubricant and a Digipower Re-Fuel portable charger) from the Army and Air Force Exchange Service, in violation of Article 121 of the UCMJ, making false statements related to the wrongful appropriation of those items, in violation of Article 107 UCMJ, 24-hour suicide watch for over a month in Europe, threats to harm members of his platoon, and admissions to malingering.

5.      Burnett was separated from the United States Army on March 2, 2020.

6.      Less than two years later, Deputy Burnett was hired by the Sedgwick County Sheriff's Office in January 2022, despite a record of serious misconduct during his military service, including sharing child pornography, theft, and behavioral health issues.

7.      Upon belief, eight (8) days prior to the July 17, 2022, dual rape and sodomization of both plaintiff Elizabeth Ponce and fellow inmate Isabel Martin, Burnett attempted to solicit another female inmate for oral sex at the SCADF. It is believed by the plaintiff that this incident

was documented in a Prison Rape Elimination Act (PREA) complaint and investigated by a PREA investigator.

8.    Despite the multiple warning signs, Deputy Burnett was left alone in a woman's Pod with easy, private access to the female inmates.

9.    On July 17, 2022, at approximately 8:13a.m. Deputy Burnett entered Ms. Ponce's cell where he encountered Ms. Ponce and Ms. Martin.  Deputy Burnett sodomized both Ms. Ponce and Ms. Martin.

10.    Later that same day, at around approximately 2:30p.m., Deputy Burnett again encountered Ms. Ponce and Ms. Martin in Ms. Ponce's cell where he again sodomized Ms. Martin and vaginally raped Ms. Ponce.

11.    Deputy Burnett pled guilty pursuant to a plea agreement in the Eighteenth Judicial District of Sedgwick County Kansas in cases 22 CR 001054 and 22 CR 001104 of one count of Official Misconduct, contrary to Kansas Statutes Annotated (K.S.A.) 2021 Supp. 21-6002(a)(5)(b)(1)(B)(i), and three counts of Unlawful Sexual Relations contrary to K.S.A. 2021 Supp. 21-5512(a)(3).  As part of the plea agreement, a third case, 22 CR 001405 was dismissed.

12.    Despite a record of serious misconduct during his military service, prior complaints about Burnett's inappropriate behavior, including a documented PREA complaint just eight days before the assault, the Sedgwick County Sheriff's Office and Sheriff Jeff Easter failed to take appropriate action to protect inmates from Deputy Burnett.

13.    The Sheriff's Office's and Sheriff Jeff Easter's failure to adequately screen, hire, train, and supervise Deputy Burnett directly resulted in injury to the Plaintiff, and the violation of Plaintiff's constitutional rights.

14.    The actions of all Defendants violated Plaintiff's rights under the United States Constitution. Those actions violating said rights are enumerated hereinafter.

15.    Plaintiff's claims for damages herein are authorized by Kansas law and by: (1) 42 U.S.C. §1983, which provides for redress for the deprivation under color of any statute, ordinance, regulation, custom or usage of any state or territory of any rights, privileges or immunities secured to all the citizens or persons within the jurisdiction of the United States; (2) the Eighth and Fourteenth Amendments to the United States Constitution; and (3) 42 U.S.C. §1988, which allows the prevailing party to collect a reasonable attorney's fee as costs in any action or proceeding to enforce 42 U.S.C. §1983. Accordingly, Plaintiff seeks compensatory damages, exemplary damages, attorney's fees, and costs as a result of Defendants' violations of Plaintiff's constitutional rights.

## THE PARTIES, JURISDICTION & VENUE

16.    Plaintiff Elizabeth Ponce is currently a resident of Kansas, and is in the custody of the Kansas Department of Corrections in Topeka, Kansas.

17.    Defendant Sheriff Jeff Easter was at all times material hereto the elected Sheriff of Sedgwick County, Kansas. Defendant Easter was responsible for the promulgation and administration of the policies and procedures of the Sedgwick County Sheriff's Department, including the Sedgwick County Adult Detention Facility, including the hiring, training, and supervision of its deputies and employees. Defendants Sedgwick County, Kansas Sheriff's Office and Sheriff Jeff Easter may be served through counsel David Cooper and Charles Branson with Fisher, Patterson, Sayler & Smith LLP.

18.    Defendant Dustin Burnett is currently in the custody of the Kansas Department of Corrections, and is placed at the Lansing Correctional Facility. His inmate number is #0128875.

4

He can be served with process at 301 E. Kansas Avenue, Lansing, Kansas 66043, or by other means as authorized by law.

19.     Kansas Statutes Annotated §19-805(a) states in pertinent part: (a) In addition to the undersheriff, the sheriff also may appoint, promote, demote and dismiss additional deputies and assistants necessary to carry out the duties of the office, for whose official acts the sheriff is responsible. Persons may also be deputized by such sheriff or undersheriff, in writing, to do particular acts. **The sheriff and sureties of the sheriff shall be responsible, on the official bond of the sheriff, for the default or misconduct of the undersheriff and deputies.** (Emphasis added).

20.     Deputy Burnett was at all times material hereto a Detention Deputy within the Sedgwick County Sheriff's Department, and thus, a subordinate of Defendant Easter and an agent, deputy, servant, and employee of the Sedgwick County Sherriff's Office, and Sheriff Jeff Easter.

21.     At all times material hereto, Defendant Easter was responsible for upholding the laws of the United States of America and the State of Kansas.

22.     At all times material hereto, Defendant Easter was responsible for the following:

   (a)     directing, supervising, managing, and controlling the Sedgwick County Sheriff's Department and the Sedgwick County Adult Detention Facility.

   (b)     promulgating and enforcing the Sedgwick County Sheriff Department's policies and procedures, including the policies regarding administration of the Sedgwick County Adult Detention Facility and the treatment of prisoners therein.

   (c)     the hiring, training, education and supervision of all Sedgwick County Sheriff Department's deputies, officers, agents, and personnel.

23.    In all actions described herein, Defendants were acting under color of law.

24.    Defendant Sheriff Easter is sued in his official capacity only.

25.    Defendant Dustin Burnett is sued in his individual and official capacity.

26.    Jurisdiction is conferred on this Court by 28 U.S.C. §1331 which provides original "federal question" jurisdiction over all civil actions arising under the United States Constitution and laws or treaties of the United States. Jurisdiction is further conferred by 28 U.S.C. §1343(a)(3), which provides for original jurisdiction in suits authorized by 42 U.S.C. §1983.

27.    Plaintiff Ponce's claims for damages herein are authorized by: (1) 42 U.S.C. §1983, which provides for redress for the deprivation under color of any statute, ordinance, regulation, custom or usage of any state or territory of any rights, privileges or immunities secured to all the citizens or persons within the jurisdiction of the United States; (2) the Eighth and Fourteenth Amendments to the United States Constitution; and (3) 42 U.S.C. §1988, which allows the prevailing party to collect a reasonable attorney's fee as costs in any action or proceeding to enforce 42 U.S.C. §1983.

28.     To the extent Ms. Ponce is also presenting state law tort claims, plaintiff requests this Honorable Court accept supplemental jurisdiction over these claims pursuant to 28 U.S.C. §1367(a).

29.    Upon belief the notice provisions of K.S.A. 12-105b(d) apply to some or all of the defendants in this action as a "municipality" or an employee thereof, as defined under the relevant provisions of the Kansas Tort Claims Act, found at K.S.A. 75-6102. Plaintiff has fully complied with all conditions precedent to bringing this action under the notice provisions of K.S.A. 12-105b(d) and the Kansas Tort Claims Act, K.S.A. 75-6101 et seq.

30.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, as Defendants' actions as well as the events giving rise to the claims all occurred in Wichita, Sedgwick County, Kansas.

31.    Plaintiff now seeks justice under 42 U.S.C. §1983 and Kansas law for malicious and recklessly indifferent violations of her clearly established rights under the Eighth & Fourteenth Amendments to the United States Constitution, and violations under Kansas law.

## STATEMENT OF FACTS

Plaintiff hereby adopts by reference paragraphs one through thirty-one (1-31) inclusive, and, in addition, further states and alleges:

32.    At all times material hereto, Deputy Burnett was an employee of the Sedgwick County Sheriff's Department. As such, he was subject to the supervision and control of Defendant Easter. Defendant Easter was the elected Sheriff of Sedgwick County, and thereby, the person with the ultimate decision-making authority for the Sedgwick County Adult Detention Facility.

33.    On or about July 17, 2022, and over a period of time prior thereto, Plaintiff was a detainee in the Sedgwick County Adult Detention Facility, 141 W. Elm, Wichita, Sedgwick County, Kansas.

34.    At all times material hereto, Defendant Easter, as Sheriff of Sedgwick County, had, along with the staff of the facility, authority over and the responsibility for the detainees at the Sedgwick County Adult Detention Facility, including but not limited to Plaintiff, who was in the custody of Defendants as a detainee at said facility.

35.    Plaintiff was in a custodial relationship with Defendant and thereby was in a special relationship which imposed on the Defendant-custodian a special responsibility to ensure and protect her health and safety.

36.    On the morning of July 17, 2022, Isabel Martin went to Elizabeth Ponce's cell, cell 2222, between 7:30a.m. and 8:15a.m.  Once Martin was in Ponce's cell, Deputy Burnett entered section B of Pod 22 and went straight to Ponce's cell. Deputy Burnett stood in the doorway of cell 2222 with the door partially closed allowing room for only his 6'3" frame to fit in the doorway. Looming in uniform over the two females, Deputy Burnett, stated "Who's going to do it first?" Martin and Ponce believed Deputy Burnett was referring to sex.

37.    Ponce and Martin did not feel like they could say 'no' to Deputy Burnett given him being in a uniform, his position of power over them as the pod deputy, and being trapped inside a cell.

38.    Burnett demanded Martin and Ponce get on their knees. Upon their attempts to reject him, Deputy Burnett grabbed Ponce by the arm, pulling her to the ground and shoving her onto her knees. Ms. Ponce describes this act as an of violence as Deputy Burnett repeatedly sodomized her, grabbing the back of her head causing her to gag, choke and struggle to breathe.

39.    Once finished with Ms. Ponce, Deputy Burnett turned his attention to Ms. Martin. Having just observed what had happened, Ms. Martin felt trapped, and without a choice, unable to decline Deputy Burnett due to his position of power over her.  One way or the other, now or later, he would get exactly what he wanted. If Ms. Martin was to survive in Deputy Burnett's world, she would have to do as she was told.

40.    Deputy Burnett would violently sodomize Ms. Martin repeatedly, using her in the same manner as Ms. Ponce.

41.    Shortly thereafter, Deputy Burnett stopped in response to a commotion in the day room area of Pod 22.  Apparently, some or all of Deputy Burnett's actions were witnessed by a third inmate, T.L.D., who was stating out loud that his actions were inappropriate. After being

interrupted, Deputy Burnett attempted to kiss Ms. Martin on the lips, waited a moment until his erection went flaccid, then left the cell.

42.     Security cameras captured Deputy Burnett going straight toward Ms. Ponce's cell at 8:13a.m. The cameras are unable to capture the events in the cell, but do show Burnett's feet leaving cell 2222 at 8:27a.m.

43.     That was not the only time Ms. Martin and Ms. Ponce would encounter Deputy Burnett. Not only would Deputy Burnett continue to harass them during the morning by asking them "[if his] dick is big," he would pay another visit to Ms. Ponce's cell in the afternoon.

44.     Later in the day, around 2:30p.m., Deputy Burnett once again quickly cornered Ms. Martin and Ms. Ponce in Ms. Ponce's cell. Deputy Burnett entered cell 2222, stating that he was 'going to finish,' but this time he was going to have vaginal sex.  Ms. Martin cleverly stated she was on her period, whereupon Deputy Burnett began to re-sodomize Ms. Martin's mouth, telling Ms. Martin that he wanted to 'finish in her mouth.' After about a minute or so, Deputy Burnett stopped and turned his attention to Ms. Ponce ordering her to lean over the bed.

45.     Deputy Burnett grabbed Ms. Ponce by the neck and bent her over the bed, pulling her underwear to the side.  Deputy Burnett proceeded to put his penis in Ms. Ponce's vagina, his thumb in her anus, and over the next few minutes Deputy Burnett raped Ms. Ponce.

46.     It was very loud and very rough; both women described how Deputy Burnett's duty belt was banging against the bed, making enough noise that he held it to keep it quiet. Burnett's conduct was so forceful, Ms. Ponce bled for five (5) days after being raped. When Deputy Burnett was finished, he removed his penis and ejaculated onto Ms. Ponce's lower back.  He smeared the ejaculate around with his hand, and told Ms. Ponce to go shower. Deputy Burnett adjusted his uniform, left the cell, and exited the section.

47.     Again, security cameras captured Deputy Burnett entering Ms. Ponce's cell at 2:31p.m. in the afternoon, where he remained until 2:35p.m.

48.     Ms. Ponce kept her underwear as proof of what had occurred, saving it in a plastic bag. When she and Ms. Martin went to the deputy's booth for tampons and a razor, Deputy Burnett used the opportunity to 'apologize' and shared pictures of his girlfriend and child.

49.     On the same day as the rape and sodomy of Ms. Martin and Ms. Ponce, July 17, 2022, upon belief, Deputy Burnett propositioned a fourth female inmate, K.R.M., under his watch. After K.R.M. rejected Deputy Burnett's solicitation for oral sex, Deputy Burnett leaned back in his chair and began talking about an investigation that was being conducted on him about making sexual comments towards an inmate, which, upon belief, referred to the PREA investigation regarding Deputy Burnett's July 9, 2022, harassment of a female inmate.

50.     Sexual crimes were not the sum total of Deputy Burnett's misconduct on July 17, 2022.  At some point on that same day, Deputy Burnett witnessed male inmates in Pod 8 in the midst of a scheme to make a fist-sized hole in a window to smuggle in contraband like cellphones, drugs, and weapons, yet Deputy Burnett took no action to stop, prohibit, deter, rectify, or otherwise notify other deputies of the situation. In fact, later the same evening, Deputy Burnett stood in the entryway of the jail cell with the broken window and watched the inmates pull their contraband in through the window. The inmates showed him the contraband; Deputy Burnett advised them, "Don't get into trouble," and walked away. The contraband was being brought in advance of an inmate-planned riot. This incident is documented under Sedgwick County case number 22S006347.

51.    Another inmate notified a sergeant of the hole in the window and the forthcoming riot. During the course of its investigation, the Sheriff's Office learned it was the intent of certain inmates to bring a handgun into the facility, and potentially take deputies hostage.

52.    Burnett's actions needlessly jeopardized the health, safety and well-being of inmates, as well as the men and women serving in the Sheriff's Office. Deputy Dustin Burnett was arrested on July 20, 2022, for Attempted Traffic of Contraband into a Penal Institution, Conspiracy to Traffic Contraband into a Penal Institution, and Official Misconduct.

53.    While detectives investigated the contraband and forthcoming riot, Deputy Burnett's personal cell phone was analyzed. Investigators learned that in late June of 2022, Burnett searched for "Jail Guard Fucks Inmate" porn, conducted internet and Facebook searches for individual inmates in custody. On July 5, 9, and 10, Deputy Burnett conducted database searches for specific female inmates on the jail inmate and jail ATM websites, and made a note in his Memo App that a specific inmate in custody was "fine as hell." The investigators also found a photo of a female inmate stashed in Deputy Burnett's wallet. Shortly thereafter, Burnett was also charged with the assaults against claimants Isabel Martin and Elizabeth Ponce.

54.    Defendant Burnett's actions and sexual assault of the Plaintiff served no legitimate law enforcement, safety, or jail administration purpose.

55.    Plaintiff sustained physical injury, emotional distress, mental anguish, and economic losses. as well as pain and suffering, as a result of the sexual assault and excessive force used upon her.

### Larger Context of Misconduct amongst Sedgwick County Sheriff's Deputies

56.    A troubling pattern of misconduct and violence perpetrated by detention deputies and civilian employees working within the Sheriff's Office, underscoring a systemic failure to

uphold the safety and dignity of those in its care, to ensure that safety of the public, and to be a steward of taxpayer funds. This chronology of documented assaults and other wrongdoings, extensively reported by the Sheriff's Office and through various news outlets and media over the past few years, paints a stark picture of an environment where abuse and negligence flourish unchecked. These incidents are not isolated but indicative of a pervasive culture of impunity that has allowed, and in some cases even encouraged, such reprehensible behavior.

57.    *December 6, 2019*

On December 6, 2019, Detention Deputy Shawn McGonnigil was arrested for stalking a coworker.  McGonnigil had been with the Sheriff's Office approximately 6 years at the time of his arrest.

58.    *February 11, 2020*

On February 11, 2020, eight (8) detention deputies, were placed on administrative leave after the Sheriff's Office received an allegation that the 8 county employees of the Sheriff's Office were involved in using, distributing and selling steroids.

59.    *February 26, 2020*

Employees in the Property and Evidence section we investigated following an audit showing items and evidence had gone missing from investigations Approximately, $145,000.00 in money, drugs, power tools, and seven (7) guns were stolen from the Sheriff's Office and the Property and Evidence building.

60.    *June 26, 2020*

A detention deputy was arrested after filing a false report claiming to be a victim of sexual assault.  The detention deputy later admitted to filing the false report when the deputy applied to become a commissioned deputy.

61.  *July 7, 2020*

On July 7, 2020, Detention Deputy Timothy Baskerville was arrested under Sedgwick County Sheriff's Office case number 2020S005748. Baskerville was accused of kissing and fondling two (2) victims, and was arrested for eight (8) counts of unlawful sexual relations with an inmate. Baskerville had been with the Sheriff's office for 17 months. He was charged and convicted under case number 20 CR 001630.

62.  *November 20, 2020*

Detention Deputy Braydon Hoover-Lane was arrested and placed on unpaid suspension for three (3) counts of trafficking contraband into the SCADF. The case was charged under Sedgwick County case number 21 CR 000718.

63.  *March 2, 2021*

In March of 2021, Detention Deputy David Cameron, who had been with the Sheriff's Office since June of 2019, was arrested for trafficking contraband and neglect of an inmate. Cameron was arrested for one count of Mistreatment of a Confined Person and one count of Tracking Contraband.

64.  *March 15, 2021*

On March 15, 2021, Detention Deputy Jonathan Ramirez was booked for Domestic Violence Battery and Criminal Damage to Property.

65.  *March 23, 2021*

On March 23, 2021, Natalie Willis, a kitchen employee that worked in the SCADF kitchen, was arrested for two counts of trafficking contraband into SCADF. Willis was arrested under Sheriff's Office case number 21S002486, when she was found with THC and hydrocodone. She was eventually charged under case 23 CR 001580.

66.    *May 4, 2021*

In May of 2021, Detention Deputy Tony LoSavio was arrested under Sedgwick County Sheriff case number 21S003767, and charged with eight (8) counts of unlawful sexual relations at the SCADF case number 21 CR 000877. LoSavio pled to two (2) counts. In exchange, for his plea no charges were brought against LoSavio from another separate investigation two years earlier – 19S012818.

Sheriff Jeff Easter was quoted[1] the next day in the Wichita Eagle stating:

> "This here, although it's still an accusation, makes no sense to me whatsoever," Easter said. "It is very clear you cannot have any type of sexual relations with inmates that are in our custody. I don't know how much clearer the law can make it, how much clearer we can make it. So is there a change in the way we are training? There is not. Other than we tell them 'you can't do this stuff. You can't bring in contraband. You can't have sex with inmates.'"

67.    *September 26, 2021*

Detention Deputy Aareon White was arrested on September 26, 2021, for misdemeanor Domestic Violence Battery. Deputy White had only been with the Sheriff's Office for approximately six (6) months. He was arrested again just hours after his first arrest for Violating a Protective Order put in place after his first arrest. The cases were charged in the City of Wichita under case numbers 21DV000533 and 21DV002658.

72.    *January 7, 2022*

Following a week-long investigation, Detention Deputy Andrew Gilbert was arrested for trafficking contraband in the SCADF. Gilbert had been with the Sheriff's Office since June of 2019.

73.    *March 21, 2022*

---

[1] https://www.kansas.com/news/local/crime/article251179344.html

Elijah Nehemiah Reed was released from jail erroneously by detention deputies from the SCADF.  Reed was being held for criminal possession of a firearm.  Reed was arrested on April 8, 2022, in Fort Worth, Texas. The Sedgwick County Sheriff's Office Extradition Unit flew to Fort Worth at Sedgwick County taxpayers expense on April 20, 2022, and returned Elijah Reed to the Sedgwick County Detention Facility.

74.     *July 9, 2022 - July 17, 2022*

This is the date of the Detention Deputy Burnett's activities detailed above.

75.     *December 2022 – April 2023*

Five deputies were investigated for having sex with a records employee, sometimes while on duty.   Of the five deputies, two deputies, Kelly Meehan and Kelly Corodva lost their accreditation. The records employee, E.B., also resigned.  While it has not been clarified whether the remaining three deputies were commissioned officers or detention deputies, or where all sexual encounters took place, it bears noting that the records department was located within the SCADF during this period.

76.     *January 2 – 3, 2023*

Detention Deputy Victor M. Garcia used the Sedgwick County Sheriff's Office computer systems and Stanley Security System to record videos of inmates and send out personal information, and specifically, an inmate Pablo Duarte. Garcia was dating a woman named Luisa Mutate, who was friends with Pablo's ex-wife, Sandra Duarte-Gonzalez.  Garcia was charged in case number 23 CR 000658.

77.     These incidents were collected from court files, press releases and news articles, and are not a complete reflection of the state of the Sedgwick County Sherrif's Office which, even

by these limited public documents and reports, is rife with misconduct, to the detriment of the people in their care and the community at large.

78.    In just the two (2) years leading up to Detention Deputy Burnett's conduct there were no less than eighteen (18) detention deputies across eleven (11) events that were suspended, arrested or charged with criminal conduct.

79.    Even more alarming is the statistic that in that same two-year time frame *prior to Detention Deputy Burnett's conduct*, there was a total five (5) deputies charged with a total of twenty-two (22) charges of trafficking contraband into the SCADF or having sexual relations with inmates.

<u>**FIRST COUNT**</u>**: Violation of 42 U.S.C. § 1983 – Eighth and Fourteenth Amendments**
**(Against Deputy Dustin Burnett in his Individual and Official Capacities)**

Plaintiff hereby adopts by reference paragraphs one through seventy-nine (1-79) inclusive, and, in addition, further states and alleges:

80.    The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

> 42 U.S.C. § 1983.

81.    At all times material hereto, Defendant Burnett was acting under color of law as an agent and employee of the Sedgwick County Sheriff's Department, was wearing his official Sedgwick County Sheriff's Department uniform, and was acting in the course and scope of his duties as Sedgwick County Sheriff Detention Deputy at the time he acted as described herein.

82.     Defendant Deputy Dustin Burnett, acting under color of state law, deprived Plaintiff of her rights under the Eighth and Fourteenth Amendments to the United States Constitution by subjecting her to rape, sodomy, sexual assault and abuse while she was confined at the Sedgwick County Adult Detention Facility.

83.     Defendant Burnett's actions were intentional, malicious, and showed a reckless disregard or deliberate indifference for Plaintiff's constitutional rights.  Moreover, the repeated assaults and excessive force were objectively unreasonable.

84.     As a direct and proximate result of Defendant Burnett's conduct violating Plaintiff's constitutional rights, Plaintiff has suffered sustained damages, including, but not limited to, physical harm, emotional distress, mental anguish, pain and suffering, and economic losses.

85.     Defendant's intentional, malicious, reckless and deliberate indifferent acts justify an award of punitive damages.

**SECOND COUNT: Violation of 42 U.S.C. § 1983 – Eighth and Fourteenth Amendments (Against Sedgwick County Sheriff's Office and Sheriff Jeff Easter in his Official Capacity)**

Plaintiff hereby adopts by reference paragraphs one through eighty-five (1-85) inclusive, and, in addition, further states and alleges:

86.     Defendants Sheriff Jeff Easter and Sedgwick County Sheriff's Office, acting under color of state law, deprived Plaintiff of her rights under the Eighth and Fourteenth Amendments to the United States Constitution by failing to protect her from sexual assault and by allowing Deputy Burnett to continue to supervise and interact with female inmates despite knowledge of his inappropriate behavior and dangerous propensities.

87.     Defendants were deliberately indifferent to Plaintiff's rights and safety, as evidenced by their failure to adequately screen, hire, train, and supervise Deputy Burnett, despite prior knowledge of his misconduct and dangerous tendencies.

88.     Defendants were deliberately indifferent to Plaintiff's rights and safety, as evidenced by their failure to adequately screen, hire, train, and supervise Deputy Burnett, despite a recent and robust history of detention deputies violating the law including having sexual relations with inmates.

89.     As a direct and proximate result of Defendants' deliberate indifference, Plaintiff has suffered sustained damages, including, but not limited to, physical harm, emotional distress, mental anguish, pain and suffering, and economic losses.

90.     Defendants' reckless and deliberate indifferent acts justify an award of punitive damages.

**THIRD COUNT: Violation of 42 U.S.C. § 1983 – Monell Claim**
**(Against Sedgwick County Sheriff's Office and Sheriff Jeff Easter in his Official Capacity)**

Plaintiff hereby adopts by reference paragraphs one through ninety (1-90) inclusive, and, in addition, further states and alleges:

91.     Defendants Sedgwick County Sheriff's Office and Sheriff Jeff Easter, in his official capacity, maintained policies, practices, or customs that demonstrated deliberate indifference to the constitutional rights of inmates, including Plaintiff.

92.     These policies, practices, or customs included, but were not limited to, the failure to adequately screen, hire, train, supervise, and discipline employees, including Deputy Burnett, despite knowledge of their propensity for misconduct.

93.     The failure of Defendants to establish and/or to enforce existing policies to protect inmates from sexual assault by detention deputies amounted to deliberate indifference to the rights and safety of inmates, including Plaintiff.

94.    As a direct and proximate result of these policies, practices, or customs, Plaintiff has suffered sustained damages, including, but not limited to, physical harm, emotional distress, mental anguish, pain and suffering, and economic losses.

### FOURTH COUNT: Negligent Hiring, Retention, and Supervision
### (Against Sheriff Jeff Easter and Sedgwick County Sheriff's Office)

Plaintiff hereby adopts by reference paragraphs one through ninety-four (1-94) inclusive, and, in addition, further states and alleges:

95.    Defendants, Sheriff Jeff Easter and Sedgwick County Sheriff's Office, were negligent in hiring, retaining, and supervising Deputy Burnett, who was unfit for his position due to his prior misconduct and behavior.

96.    Defendants knew or should have known of Burnett's unfitness and failed to take appropriate measures to ensure the safety of inmates, including Plaintiff.

97.    As a direct and proximate result of these policies, practices, or customs, Plaintiff has suffered sustained damages, including, but not limited to, physical harm, emotional distress, mental anguish, pain and suffering, and economic losses.

### FIFTH COUNT: Negligence Per Se
### (Against All Defendants)

Plaintiff hereby adopts by reference paragraphs one through ninety-seven (1-97) inclusive, and, in addition, further states and alleges:

98.    Defendants violated federal laws criminalizing any sexual relationship between detention deputies and inmates, creating a framework for a negligence per se action.

99.    Plaintiff, as an inmate, was in a powerless position and could not legally consent to the sexual acts perpetrated by Deputy Burnett.

100.    K.S.A. §19-805(a) states "The sheriff and sureties of the sheriff shall be responsible, on the official bond of the sheriff, for the default or misconduct of the undersheriff and deputies." (Emphasis added).

101.    As a direct and proximate result of Defendants' violation of these laws, Plaintiff has suffered sustained damages, including, but not limited to, physical harm, emotional distress, mental anguish, pain and suffering, and economic losses.

**SEVENTH COUNT: Intentional Infliction of Emotion Distress/Tort of Outrage (Against Deputy Dustin Burnett)**

Plaintiff hereby adopts by reference paragraphs one through one hundred one (1-101) inclusive, and, in addition, further states and alleges:

102.    Defendant Deputy Dustin Burnett's conduct in sexually assaulting Plaintiff was extreme and outrageous, going beyond all possible bounds of decency and utterly intolerable in a civilized community.

103.    Defendant Burnett's conduct intentionally or recklessly caused Plaintiff severe emotional distress.

104.    By operation of Kansas law, Defendant Sheriff Jeff Easter is responsible for the conduct of Defendant Deputy Dustin Burnett. K.S.A. §19-805(a) states "The sheriff and sureties of the sheriff shall be responsible, on the official bond of the sheriff, for the default or misconduct of the undersheriff and deputies." (Emphasis added).

105.    As a direct and proximate result of Defendant Burnett's conduct, Plaintiff has suffered sustained damages, including, but not limited to, physical harm, emotional distress, mental anguish, pain and suffering, and economic losses.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff ELIZABETH A. PONCE prays for damages against the defendants, both individually and jointly, as follows:

Under Counts 1-3: (1) compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs; (2) punitive damages; and (3) costs, expenses and reasonable attorney's fees pursuant to K.S.A. 42 U.S.C. § 1988.

Under Counts 4-7, Plaintiff claims compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. Plaintiff further requests any other relief the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff ELIZABETH A. PONCE hereby demands a trial by jury. Pursuant to D. Kan. Local R. 40.2, plaintiff will file a Designation of Place of Trial contemporaneous to the filing of her Complaint, designating Wichita, Kansas as the Place of Trial.

Respectfully submitted,

HUTTON & HUTTON

*/s/ Andrew W. Hutton, #10264*
Andrew W. Hutton, #10264
J. Darin Hayes, #16755
Matthew M. Dwyer, #22492
8100 E. 22nd St. N., Bldg. 1200
Wichita, KS 67226
Phone: (316) 688-1166
Fax: (316) 686-1077
E-Mail: Andrew.Hutton@huttonlaw.com
       Darin.Hayes@huttonlaw.com
       Matthew.Dwyer@huttonlaw.com
*Attorneys for Plaintiff*