## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ELIZABETH A. PONCE,<br><br>              *Plaintiff,*<br><br>v.<br><br><br>SEDGWICK COUNTY, KANSAS, BOARD<br>OF COUNTY COMMISSIONERS, et al.,<br><br>              *Defendants.* | **CONSOLIDATED CASES**<br><br><br>Case No. 24-1124-EFM |
| ISABEL D. MARTIN,<br><br>              *Plaintiff,*<br><br>v.<br><br>SEDGWICK COUNTY, KANSAS, BOARD<br>OF COUNTY COMMISSIONERS, et al.,<br><br>              *Defendants.* | Case No. 24-1125-EFM |

## MEMORANDUM AND ORDER

Plaintiffs Elizabeth Ponce and Isabel Martin bring separate but identical suits against Defendants Sedgwick County Kansas Board of County Commissioners ("BOCC"); the Sheriff of Sedgwick County, Jeff Easter; and Dustin Burnett, former Detention Deputy at the Sedgwick County Adult Detention Facility ("SCADF"). Plaintiffs bring claims under 42 U.S.C. § 1983 and Kansas state law stemming from their allegations that they were sodomized and raped by

Defendant Burnett while in custody at the SCADF. Plaintiffs' cases were consolidated for discovery.[1] Ms. Ponce's is the lead case for consolidation.

Before the Court are three pairs of motions. Except for the captions, the motion pairs are nearly identical. As such, the Court will issue one order addressing the three pairs. Defendant Burnett filed Motions to Dismiss.[2] Defendant Sheriff Easter filed Motions for Partial Judgment on the Pleadings.[3] And Defendant BOCC filed Motions to Dismiss.[4] For the reasons stated herein, the Court denies Burnett's motions to dismiss, grants in part and denies in part Sheriff Easter's motions for judgment on the pleadings, and grants the BOCC's motions to dismiss.

## I.    Factual and Procedural Background

### A.    Parties

Plaintiffs were inmates at the SCADF. Burnett was employed as a Detention Deputy at the SCADF during the relevant timeframe. Defendant Sheriff Easter is the Sheriff of Sedgwick County and is responsible for operating the SCADF, including hiring, training, and supervising its deputies and employees. Defendant BOCC is a political subdivision of the State of Kansas in Sedgwick County.

### B.    Factual Allegations

On the morning of July 17, 2022, Martin was in Ponce's cell at the SCADF. Burnett entered Ponce's cell and demanded that both Plaintiffs perform sexual acts upon him. Although Plaintiffs attempted to reject Burnett's advances, they did not feel that they could tell Burnett "no" because

---

[1] Ponce's case number is 24-1124 and Ms. Martin's is 24-1125.

[2] Doc. 14 in Case no. 24-1124 and Doc. 16 in Case no. 24-1125.

[3] Doc. 17 in Case no. 24-1124 and Doc. 19 in Case no. 24-1125.

[4] Doc. 18 in Case no. 24-1124 and Doc. 20 in Case no. 24-1125.

he was in uniform, he was in a position of power, and they were trapped inside the cell. Burnett forcefully grabbed Ponce and repeatedly sodomized her. Next, he did the same to Martin. A commotion nearby interrupted Burnett, and he left the cell.

Throughout that same morning, Burnett sexually harassed Plaintiffs and told them he would visit Ponce's cell that afternoon. Around 2:30 that afternoon, Burnett entered Ponce's cell and cornered Martin. Burnett stated that he was "going to finish" by having vaginal sex with her. Martin responded that she was on her period, whereupon Burnett re-sodomized Martin. After about a minute, he stopped and turned his attention to Ponce. He forcefully grabbed Ponce and vaginally raped her.

These were not Burnett's only acts of misconduct while employed as a Detention Deputy. Plaintiffs are aware that he discussed with another inmate that he was under a Prison Rape Elimination Act ("PREA") investigation for making sexual comments to an inmate. Those comments were made just eight days before he sodomized and raped Plaintiffs. Burnett also witnessed male inmates make a hole in a window to smuggle contraband into the SCADF, but he did not stop or notify other deputies of the situation. He even observed inmates in possession of contraband, but did not take any action or notify other deputies.

After these failures were discovered, Burnett was arrested for Attempted Traffic of Contraband into a Penal Institution, Conspiracy to Traffic Contraband into a Penal Institution, and Official Misconduct on July 20, 2022. Shortly thereafter, he was also charged with the assaults against Plaintiffs.

## C.    Procedural History

On July 16, 2024, Plaintiffs filed separate, but nearly identical, Complaints against Defendants. In Count I, Plaintiffs assert a claim against Defendant Burnett in his official and

individual capacity under 42 U.S.C. § 1983, alleging that he violated their Eighth and Fourteenth Amendment rights by subjecting them to rape, sodomy, sexual assault, and abuse while confined in the SCADF. In Count II, Plaintiffs assert a claim against Sheriff Easter and the BOCC under 42 U.S.C. §1983, alleging that they were deliberately indifferent to Plaintiffs' Eighth and Fourteenth Amendment rights when they failed to adequately screen, hire, train, and supervise Burnett. In Count III, Plaintiffs assert a *Monell* claim under 42 U.S.C. § 1983, alleging that Sheriff Easter and the BOCC maintain polices, practices, or customs that demonstrate a deliberate indifference to Plaintiffs' rights. In Count IV, Plaintiffs bring a negligent hiring, retention, and supervision claim against Sheriff Easter and the BOCC under Kansas state law. In Count V, Plaintiffs assert a negligence per se claim, alleging that Defendants violated federal law that criminalizes sexual relationships between detention deputies and inmates. And in Count VII,[5] Plaintiffs assert an outrage or intentional infliction of emotional distress ("IIED") claim against Burnett and Sheriff Easter.

The cases were consolidated for discovery on September 19, 2024. Each Defendant has since filed identical motions in both cases. Defendant Burnett filed a Motion to Dismiss in both cases, Plaintiffs filed timely responses and no replies were filed. Defendant Sheriff Easter filed his Motion for Partial Judgment on the Pleadings, timely responses and replies were filed. Finally, Defendant BOCC filed its Motion to Dismiss, and timely responses and replies were filed. All matters presently pending are fully briefed and ripe for the Court's ruling.

---

[5] Plaintiffs do not include a Count VI.

## II.    Legal Standard

### A.    Rule 12(c) Motion

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."[6] The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[7] To survive a motion for judgment on the pleadings, the complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[8] All reasonable inferences from the pleadings are granted in favor of the non-moving party.[9] Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[10]

### B.    Rule 12(b)(6) Motion

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[11] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[12] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged

---

[6] Fed. R. Civ. P. 12(c).

[7] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[9] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation omitted).

[10] *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (citations and quotations omitted).

[11] Fed. R. Civ. P. 12(b)(6).

[12] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

misconduct.[13] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[14] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[15]

## III.    Analysis

### A.    Sheriff Easter's Motion for Partial Judgment on the Pleadings

Pursuant to Fed. R. Civ. P. 12(c), Sheriff Easter moves for judgment in his favor on any claims that he is vicariously liable for Burnett's misconduct, any claims for punitive damages, and on Plaintiffs' claims for outrage/intentional infliction of emotional distress. His request does not relate to the § 1983 claims against him in his official capacity (Counts II and III), or the negligent hiring, retention, and supervision claim (Count IV).

### 1.    *Vicarious Liability*

Sheriff Easter argues he cannot be held vicariously liable for Burnett's torts under either the Kansas Tort Claims Act ("KTCA") or pursuant to K.S.A. § 19-805(a). The Court will address each statutory scheme in turn.

### a.    KTCA

Sheriff Easter asserts that he is not vicariously liable for Burnett's wrongful acts under the KTCA because Burnett was acting outside the scope of his employment. Plaintiffs respond that Burnett's wrongful acts were slight deviations from his expected duties, and therefore within the

---

[13] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[14] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[15] *Iqbal*, 556 U.S. at 678–79.

scope of his employment. The Court finds that Burnett was not acting within the scope of his employment as a Detention Deputy when he sodomized and raped Plaintiffs.

This Court has consistently held that a jailhouse deputy's sexual assault of an inmate does not act within the scope of employment such as to impose vicarious liability on a sheriff under the KTCA.[16] The KTCA imposes liability on Kansas governmental entities for the wrongful acts of "any of its employees while acting within the scope of their employment."[17] To determine whether an employee is acting within the scope of their employment, the court considers "(1) whether the act by the employee was done for the employee's personal benefit or in furtherance of the state's business; (2) whether there was express or implied authority to perform the act in question; and (3) whether the employee's act was reasonably foreseeable by the State."[18]

The first two factors plainly weigh against a finding that Burnett was acting within the scope of his employment. First, it cannot be said that Burnett's actions of sodomizing and raping Plaintiffs were done to further the State's business; clearly, his acts were for his personal gratification. Second, Burnett had no authority—explicit or implicit—to harm Plaintiffs. In fact, he was under an explicit duty to treat Plaintiffs with humanity.[19]

Plaintiffs urge the Court to find that Burnett's conduct was foreseeable by applying the "slight deviation" test described in *O'Shea v. Welch*.[20] "Slight deviation analysis provides a

---

[16] *See Meyer v. Nava*, 518 F. Supp. 2d 1279, 1290–91 (D. Kan. 2007); *Rothermel v. Sedgwick Cnty., Kan., Bd. of Comm'rs*, 2024 WL 814504, at *12 (D. Kan. Feb. 27, 2024).

[17] K.S.A. § 75-6103(a).

[18] *Com. Bank of St. Joseph, N.A. v. Kan.*, 251 Kan. 207, 833 P.2d 996, 1001 (1992).

[19] K.S.A. § 19-1919 ("All prisoners will be treated with humanity, and in a manner which promotes their reform.").

[20] 350 F.3d 1101, 1108 (10th Cir. 2003).

framework" for determining "what conduct should have been fairly foreseeable."[21] But the slight deviation test is applicable when an employee engages in a mixed-motive or dual-purpose venture.[22] When an employee's deviation is "for purposes entirely personal to the servant" or "amounts to a turning aside completely from the employer's business, so as to be inconsistent with its pursuit" an employer is exonerated from liability.[23] Moreover, when a "deviation [is] so marked . . . that no conclusion other than that the act was a departure could reasonably be supported" it is appropriate for a court to determine so as a matter of law.[24]

Here, Burnett's actions were entirely personal. And the crimes he committed against Plaintiffs were inconsistent with the State's purpose and pursuit—safeguarding inmates and treating them with humanity. Because Burnett's actions so radically departed from the duties for which he was employed, Burnett's actions were not "foreseeable" in furtherance thereof.

Considering all three factors, the Court finds that Burnett was not acting within the scope of his employment. Because Burnett was not acting within the scope of his employment, Sheriff Easter is not subject to vicarious liability under the KTCA.

b.  K.S.A. §§ 19-805 and 19-811

Next, Sheriff Easter moves the Court to find that he is not vicariously liable under K.S.A. § 19-805 or K.S.A. § 19-811, arguing that these statutes limit his liability only to the official acts of his deputies. Plaintiffs assert that, under these statutes, Sheriff Easter is liable for his deputies' acts when they are done under color of their office. The Court cannot find as a matter of law that

---

[21] *Id.* at 1105 (internal quotation marks omitted).

[22] *Leininger v. United States*, 499 F. Supp. 3d 973, 990 (D. Kan. 2020) ("The slight deviation test allows for an employee to pursue 'dual purpose ventures' without wholly departing from the scope of employment." (citing *O'Shea*, 350 F.3d at 1107)).

[23] *O'Shea*, 350 F.3d at 1107 (citations omitted).

[24] *Id.*

Burnett was not acting under the color of his office, and thus, the Court cannot find that Sheriff

Easter is not vicariously liable for Burnett's actions under KSA §§ 19-805 and 19-811.

Sheriff Easter is vicariously liable for the official acts of his deputies. A Kansas sheriff has

the authority to appoint deputies, for whose "official acts the sheriff is responsible."[25] Further,

Kansas requires a county sheriff to post a surety bond upon entering into the office of sheriff.[26]

Additionally, the "sheriff and sureties of the sheriff shall be responsible, on the official bond of

the sheriff, for the default or misconduct of the undersheriff and his deputies."[27] "Clearly, K.S.A.

§ 19-805 imposes vicarious liability on [a sheriff] for the state law torts of his deputies."[28] But this

liability only attaches when the tort occurs "in the performance of an official act by the deputy."[29]

Likewise, K.S.A. § 19-811 charges the county sheriff with keeping the jail "himself, or by his

deputy or jailer" and assigns liability for the actions of "his deputy or jailer" to himself and his

sureties.[30]

The parties dispute what constitutes an "official act." Sheriff Easter cites *Monroe v. Darr*[31]

for a narrow definition "official act." According to  Sheriff Easter's narrow interpretation of

*Monroe*, an official act is "an act or duty imposed on an officer by law, that is, an act which the

law requires him officially to perform."[32] But the *Monroe* court's definition of an "official act" is

---

[25] K.S.A. § 19-805(a).

[26] K.S.A. § 19-801a ("Such sheriff shall, before entering upon the duties of the office, execute to the state of Kansas a good and sufficient corporate surety bond.").

[27] K.S.A. § 19-805(a).

[28] *Marks v. Lyon Cnty. Bd. of Cnty. Comm'rs*, 590 F. Supp. 1129, 1132 (D. Kan. 1984).

[29] *Monroe v. Darr*, 214 Kan. 426, 520 P.2d 1197, 1201 (1974).

[30] K.S.A. § 19-811.

[31] 214 Kan. 426, 520 P.2d 1197, 1201 (1974).

[32] *Id.*

more expansive than that; it held that an "official act includes any act done by an officer in his official capacity under color of his office."[33] A sheriff is not liable for "a purely personal act of an officer not done as a part of, or in connection with, his official duties"[34] or one that is a "private errand . . . completely apart from the duties of a peace officer."[35] But logic dictates that the inverse of these must be true: when an officer acts "in connection with" or not "completely apart from" his duties, his acts may reasonably be considered "under color of his office."

There is surprisingly little caselaw addressing when a sheriff is liable on his bond for the misconduct of his deputies. Sheriff Easter cites *Hitsman v. Kennedy*[36] and *Libby v. Schmidt*[37] to support the proposition that he is not liable for Burnett's conduct. Neither is particularly helpful.

In *Hitsman*, the Supreme Court of Kansas found the Dickinson County Sheriff was not liable on his bond for injuries sustained by the plaintiff when the plaintiff was struck by a bullet fired by an undersheriff when the undersheriff discharged his firearm in Geary County.[38] Because the Dickinson County Sheriff's authority did not extend to Geary County, the Dickinson County undersheriff could not be considered engaged in official acts when in Geary County.[39]

In *Libby*, the Supreme Court of Kansas found that the Ellsworth County Sheriff was not liable on his bond when a deputy sheriff perjuriously signed a complaint charging the plaintiff with

---

[33] *Id.* at 1204 (emphasis added).

[34] *Hitsman v. Kennedy*, 138 Kan. 564, 27 P.2d 218, 220 (1933).

[35] *Monroe*, 520 P.2d at 1204.

[36] 138 Kan. 564, 27 P.2d 218 (1933).

[37] 179 Kan. 683, 298 P.2d 298 (1956).

[38] *Hitsman*, 27 P.2d at 220.

[39] *Id.*

four offenses.[40] The court found that because (1) anyone can sign a complaint and (2) the deputy was under no duty to sign the complaint, the act of signing the complaint was not an official act.[41]

The most factually-similar case discussing this Kansas statue seems to be *Farmer v. Rutherford*.[42] In that case, the Supreme Court of Kansas found the Douglas County Sheriff was liable on his bond when the plaintiff was physically assaulted by the Douglas County Sheriff and his deputies while in their custody at the county jail.[43] The beatings plaintiff received were apparently meant to elicit plaintiff's confession to crimes.[44] The court reasoned that because a sheriff is under a duty to treat prisoners with humanity, "[i]t can hardly be argued that a sheriff is faithfully performing the duties of his office without oppression where he assaults and beats a prisoner in his charge."[45]

Particular to K.S.A § 19-811, this Court recently determined that whether a sheriff is liable for all the acts of his deputies—including sexual misconduct with inmates—is a question best reserved for a jury.[46] In arriving at that conclusion, this Court noted that, although the statute "has been on the books for over 150 years," no case had addressed the contours of when a sheriff is liable for the acts of his deputies in the county jail.[47]

---

[40] *Libby*, 298 P.2d at 300.

[41] *Id.* at 300–01.

[42] 136 Kan. 298, 15 P.2d 474 (1932).

[43] *Id.* at 478.

[44] *Id.*

[45] *Id.*

[46] *Rothermel*, 2024 WL 814504, at *10.

[47] *Id.* at *9–*10.

Here, the Court cannot find that Burnett's actions were not done under color of his office. As discussed, it seems clear that Burnett was engaging in a personal act or private errand. But he engaged in the misconduct while he was on duty and in uniform. Granting all reasonable inferences to Plaintiffs, because he was on duty and in uniform, the Court cannot find as a matter of law that Burnett was not acting "in connection with his[] official duties" or that his misconduct was "completely apart from the duties" of a detention officer. As such, the Court cannot say whether Burnett's actions were official acts, and thus, cannot determine as a matter of law if Sheriff Easter is vicariously liable under K.S.A. § 19-805 or K.S.A. § 19-811. Accordingly, the Court denies Sheriff Easter's motion for judgment on the pleadings as it relates to whether he is vicariously liable for Burnett's misconduct under K.S.A. §§ 19-805 and 19-811.

   2.    *Sheriff Easter is not Liable for Punitive Damages*

Sheriff Easter asserts that he is not liable for punitive damages under § 1983 or Kansas law. Plaintiffs concede this point. As such, the Court grants judgment in favor of Sheriff Easter on any punitive damage claims against him in his official capacity.

   4.    *Outrage/IIED*

Plaintiffs bring claims for outrage/IIED against Sheriff Easter. They also assert that Sheriff Easter is vicariously liable for the outrage/IIED claim against Burnett. Sheriff Easter argues that Plaintiffs' outrage/IIED claims are really ones of assault, and as such, are time-barred. Further, he asserts that Plaintiffs have failed to plead outrageous conduct specific to him. Finally, he argues that he cannot be held vicariously liable for Burnett's tort of outrage/IIED. Plaintiffs respond that the claim is not time-barred, and Sheriff Easter's failure to supervise Burnett meets the elements of an outrage/IIED claim. The Court finds that Plaintiffs claim is not time-barred, that the facts

pled against Sheriff Easter in his official capacity are insufficient to warrant relief, but that Sheriff Easter may be vicariously liable for Burnett's misconduct.

> a.    Statute of Limitations

First, Sheriff Easter cites two cases for the proposition that Plaintiffs' outrage/IIED claims are really ones of assault, and as such are time barred. But both cited cases deal with plaintiffs seeking to transform an assault or battery claim into one for negligence to overcome the one-year statute of limitations for civil actions of assault.[48] And in both cases, the courts determined that a plaintiff cannot avoid the statute of limitations by trying to call an act "unintentional" (i.e. negligence) when the sole, fundamental act was intentional (i.e. assault/battery).[49] Contrastingly, Plaintiffs are proceeding under a theory of *intentional* infliction of emotional distress—not one of negligence. Further, the Supreme Court of Kansas considered and rejected the argument that an outrage/IIED claim grows out of an assault, and therefore is subject to the 1-year statute of limitations.[50] The Supreme Court of Kansas held that outrage/IIED claims are subject to a 2-year statute of limitations.[51] Consequently, if Plaintiffs' "claim[s] meet[] the separate elements"[52] of

---

[48] *Baska v. Sherzer*, 283 Kan. 750, 156 P.3d 617, 622 (2007) ("The outcome of this case depends upon whether [plaintiff's] claims are in substance based upon intentional or negligent actions of the defendants. If intentional, [plaintiff's] claims are barred by the 1-year statute of limitations; if negligent, her claims are not barred and are governed by the 2-year statute of limitations."); *Unruh v. City of Wichita*, 318 Kan. 12, 540 P.3d 1002, 1006 (2024) ("[Plaintiff] must distinguish his [negligence] cause of action from battery to avoid its shorter stature of limitations.").

[49] *Baska*, 156 P.3d at 756 ("[T]he fundamental distinction between assault and battery, on the one hand, and negligence, on the other, is that the former is *intentional* and the latter is *unintentional*." (citation omitted)); *Unruh*, 540 P.3d at 1014 (holding that plaintiff "cannot assert a negligence claim based *solely* on an officer's intentional use of physical force." (citation omitted)).

[50] *Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, 278 Kan. 339, 97 P.3d 492, 496–97 (2004).

[51] *Id.*

[52] *Unruh*, 540 P.3d at 1009.

an outrage/IIED claim, then the 1-year statute of limitations for an assault is not a bar to their claims.

    b.  Sheriff Easter's Official Capacity

  Outrage and intentional infliction of emotional distress are the same tort in Kansas.[53] The four elements of such a claim are: "(1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe."[54] Additionally, there are two threshold questions that a court must resolve: "(1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it."[55]

  The facts pled against Sheriff Easter do not demonstrate that his conduct was extreme or outrageous. Examining whether conduct is extreme and outrageous is an inquiry into whether "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."[56] Plaintiffs allegations amount to Sheriff Easter's failure in his screening, hiring, training, and supervision of Burnett. They allege that his failure to supervise Burnett and protect Plaintiffs from foreseeable harm constitutes outrageous conduct. Although Burnett's conduct may meet the

---

[53] *Valdez v. Emmis Commc'ns*, 290 Kan. 472, 229 P.3d 389, 476 (2010) (citing *Hallam*, 97 P.3d at 494).

[54] *Id.* (citing *Taiwo v. Vu*, 249 Kan. 585, 822 P.2d 1024, 1029 (1991).

[55] *Id.* (citing *Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175, 1179 (1981).

[56] *Roberts*, 637 P.2d at 1179.

definition of extreme and outrageous, the facts pled against Sheriff Easter—that he should have been more careful to supervise Burnett—is not conduct so extreme in degree as to exceed the bounds of decency.

Because the Court finds that the facts alleged against Sheriff Easter do not meet the first threshold question, the Court finds in favor of Sheriff Easter on Plaintiffs' outrage/IIED claims against Sheriff Easter in his official capacity.

### c.    Vicarious Liability

Sheriff Easter does not challenge the legal sufficiency of the outrage/IIED claims against Burnett, he only challenges whether he may be vicariously liable for those claims. Because "K.S.A. 19-805 imposes vicarious liability on [a sheriff] for the state law torts of his deputies"[57] and for the reasons more fully articulated above, the Court finds that Sheriff Easter may be vicariously liable under K.S.A. § 19-805 for Burnett's tort of outrage/IIED, should Plaintiffs succeed on those claims.

## B.    BOCC's Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), the BOCC moves for dismissal of the claims against it. The BOCC asserts it is not a proper party to this case as it has no authority to hire, train, or supervise deputies like Burnett. Plaintiffs point to statutory language that empowers the BOCC to finance the sheriff's office and establish personnel policies and procedures for county employees. Because the Court finds that the BOCC is not a proper party, the claims against it must be dismissed.

This Court has previously held that a board of county commissioners is not a proper party to a suit based upon allegations that a jailhouse deputy committed acts of sexual misconduct upon

---

[57] *Marks*, 590 F. Supp. at 1132.

an inmate.[58] Kansas statutes give sheriffs, not county commissions, the authority to hire, train, and supervise deputies and operate a jail. K.S.A. § 19-805(a) is a "statutory mandate . . . giving county sheriffs hiring and firing authority within their departments subject only to personnel policies county commissions may adopt as applicable to all county employees."[59] Additionally, the "Kansas Legislature has similarly given sheriffs—not county commissions—statutory authority to operate jails."[60] Accordingly, a board of county commissioners "[is] not legally responsible for the hiring or training of personnel or promulgation of policies or procedure within a [sheriff's department], particularly with regard to jail operations."[61] Because these statutes give exclusive authority to the county sheriff to establish policies and procedures for operating a jail, the county commissioners cannot "require particular operational practices in a jail."[62] It follows then, that a board of county commissioners cannot be liable for the "deleterious consequences of substandard jail policies, procedures, or practices."[63]

Plaintiffs' argument—that because the BOCC has financing and approval authority over the sheriff's personnel decisions the BOCC can still be held liable for deputies' misconduct—is not persuasive. They specifically assert that the BOCC can be held liable because (1) the sheriff must act within the budget set by the BOCC; (2) the sheriff must submit a budget for the BOCC's approval; and (3) the sheriff's personnel decisions are subject to personnel policies set by the

---

[58] *Rothermel*, 2024 WL 814504 at *3 (finding similar claims against the BOCC fail as a matter of law because "the BOCC does not have authority to mandate policies or hire and train jail staff members").

[59] *Est. of Belden v. Brown Cnty.*, 46 Kan. App. 2d 247, 261 P.3d 943, 970 (2011) (citing K.S.A. § 19-805(a)).

[60] *Id.* (citing K.S.A. § 19-811).

[61] *Id.*

[62] *Id.*

[63] *Id.*

board. Plaintiffs cite to K.S.A. § 19-805(b)(d) to support their assertions. Nonetheless, Kansas courts have determined that "an elected county sheriff 'is not subordinate of' the elected board of county commissioners."[64] Further, these powers do not "give the county commissioners the ability to supersede a sheriff's power to appoint, promote, demote, or dismiss his or her personnel."[65] Moreover, Kansas courts have determined that a board of county commissioners would exceed its authority if it took any personnel action related to a sheriff's deputy.[66]

Because Sheriff Easter—not the BOCC—had exclusive authority to hire, train, and supervise Burnett, the BOCC cannot be liable for any failure to adequately do so and it cannot be held vicariously liable for Burnett's actions. Because the BOCC is not a proper party, the Court dismisses all of Plaintiffs' claims against it.

## C.    Official Capacity Claims Against Burnett

Both Sheriff Easter and the BOCC move for the dismissal of the official-capacity claims against Burnett. Plaintiffs respond that, at this procedural stage, dismissal is not warranted. The Court finds the claims against Burnett in his official capacity duplicative of the claims against Sheriff Easter, and as such, should be dismissed.

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."[67] As such, Plaintiffs' official-capacity claims against Burnett, as a deputy employed by Sheriff Easter, are really claims against Sheriff Easter of the Sedgwick County Sheriff's Office. Because Plaintiffs have also pled claims against Sheriff Easter

---

[64] *Id.* (quoting *Bd. of Cnty. Comm'rs v. Nielander*, 275 Kan. 257, 62 P.3d 247, 254 (2003)).

[65] *Nielander*, 62 P.3d at 254.

[66] *Id.* (finding error when a district court "concluded that the Board acted within its authority to discharge [a sheriff's deputy]").

[67] *Monell v. Dept. of Soc. Srvs.*, 436 U.S. 658, 690 n.55 (1978).

in his official capacity, the claims against Burnett in his official capacity duplicate the claims against Sheriff Easter. Under these circumstances, courts routinely dismiss official-capacity suits against the agent as redundant.[68] As such, Plaintiffs' claims against Burnett in his official-capacity are dismissed.

### D.    Burnett's Motion to Dismiss

Burnett requests dismissal of the claims against him in his personal capacity. Burnett states that he has unsuccessfully sought to have counsel appointed, and as such proceeds pro se. Because Burnett proceeds pro se, the Court will liberally construe his motion as one under Fed. R. Civ. P. 12(b)(6).[69] Burnett asserts that the claims against him should be dismissed because they are time barred, lack evidence, are non-factual, and that the Plaintiffs' testimony has changed.

Plaintiffs assert that that the suit is not time-barred as it was brought within the two-year statute of limitations for personal injury suits in Kansas.[70] Burnett's alleged actions that constitute the basis of this suit occurred on July 17, 2022. Plaintiffs commenced this suit on July 16, 2024. Although close, it is apparent that Plaintiffs filed this suit within two years of Burnett's crimes against them.

Plaintiffs next respond that Burnett's remaining grounds for dismissal rely on factual disputes and are not grounds for dismissal at this stage. The Court agrees. Because, at this stage in the proceedings, the Court must accept as true all well-pleaded factual allegations in the

---

[68] *See Rothermel*, 2023 WL 3496243, at *2 (D. Kan. May 17, 2023); *Smith v. City of Lawrence, Kan.*, 2020 WL 3452992, at *5 (D. Kan. Jun. 24, 2020).

[69] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[70] K.S.A. § 60-513.

Complaint,[71] Burnett's factual disputations are not appropriate grounds for dismissal. Accordingly, the Court must deny Burnett's motion to dismiss.

**IT IS THEREFORE ORDERED** that Defendant Burnett's Motion to Dismiss (Doc. 14 in Case no. 24-1124 and Doc. 16 in Case no. 24-1125) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Sheriff Easter's Motion for Partial Judgment on the Pleadings (Doc. 17 in Case no. 24-1124 and Doc. 19 in Case no. 24-1125) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant BOCC's Motion to Dismiss (Doc. 18 in Case no. 24-1124 and Doc. 20 in Case no. 24-1125) is **GRANTED** and Defendant BOCC is **DISMISSED** from both Case nos. 24-1124 and 24-1125.

**IT IS SO ORDERED**.

Dated this 28th day of March, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[71] *Iqbal*, 556 U.S. at 678.